**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT COURT OF ILLINOIS**
**EASTERN DIVISION**

JOHN DALY, individually and on behalf
of all others similarly situated,

      Plaintiffs,

                          Civil Action No. 1:24-cv-01267

  v.

THE WONDERFUL COMPANY LLC,

      Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANT THE WONDERFUL COMPANY LLC'S MOTION TO DISMISS**

JOHNNY TRABOULSI (*pro hac vice*)
johnny.traboulsi@roll.com
REID P. DAVIS (*pro hac vice*)
reid.davis@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810

ELIZABETH M. CHIARELLO
echiarello@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-0640

Attorneys for Defendant
THE WONDERFUL COMPANY LLC

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………… 1

LEGAL STANDARD ..……………………………………………………… 2

ARGUMENT ………………………………………………………………... 2

     I.    Plaintiff fails to Adequately Allege Essential Elements of His Claims ..………… 2

          A.  Plaintiff Fails to Adequately Allege a Material Misrepresentation ………… 3

          B.  Plaintiff Fails to Adequately Allege Intent …………………..……………… 5

          C.  Plaintiff Fails to Adequately Allege Actual Injury and Damages …..……... 6

          D.  Plaintiff's Unjust Enrichment Claim Fails (Count III)..……………………. 8

     II.  Plaintiff's Claims Are Preempted or Subject to the ICFA's Safe Harbor…………... 8

CONCLUSION ………………………………………………………………….. 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)............................................................................................ 2

*Axon v. Citrus World, Inc.*
813 F. App'x 701 (2d Cir. 2020) ...................................................................... 4

*Baker v. Nestlé S.A.*
No. 18-03097, 2019 WL 960204 (C.D. Cal. Jan. 3, 2019)................................ 9

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) ........................................................................... 3

*Benson v. Fannie May Confections Brands, Inc.*
944 F.3d 639 (7th Cir. 2019) ........................................................................... 7

*Bober v. Glaxosmithkline*
246 F.3d 934 (7th Cir. 2001); 815 Ill. Comp. Stat. 505/10b(1)..................... 9, 10

*Bogie v. Rosenberg*
705 F.3d 603 (7th Cir. 2013) ........................................................................... 2

*Borsellino v. Goldman Sachs Grp., Inc.*
477 F.3d 502 (7th Cir. 2007) ........................................................................... 2

*Camasta v. Jos. A. Bank Clothiers, Inc.* 761 F.3d 732 (7th Cir. 2014) ................. 7

*Castaneda v. Amazon.com, Inc.*
Case No. 22-cv-3187, 2023 WL 4181275 (N.D. Ill. June 26, 2023).............. 3, 8

*Chiappetta v. Kellogg Sales Co.*,
No. 21-cv-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ......................... 6, 8

*Connick v. Suzuki Motor Co.*
174 Ill. 2d 482 (1996) ...................................................................................... 3

*Doe v. Columbia Coll. Chi.*
933 F.3d 849 (7th Cir. 2019) ........................................................................... 2

*Gardner v. Ferrara Candy Co.*
No. 22-1272, 2023 WL 4535906 (N.D. Ill. Mar. 22, 2023) ............................ 3

*General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) .......................................................................................................... 5

i

*Harris v. Kashi Sales, LLC*
    609 F. Supp. 3d 633 (N.D. Ill. 2022) ................................................................. 6

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*
    No. 18-6664, 2019 WL 2515919 (N.D. Cal. June 18, 2019) ............................... 5

*Ibarrola v. Kind, LLC*
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ................................................................... 4

*Kim v. Carter's Inc.*
    598 F.3d 362 (7th Cir. 2010) ......................................................................... 3, 6

*Nemphos v. Nestlé Waters N. Am., Inc.*
    775 F.3d 616, 619-20, 624 (4th Cir. 2015) ........................................................ 9

*Parks v. Ainsworth Pet Nutrition, LLC*
    377 F. Supp. 3d at 241, 244 (S.D.N.Y. 2019) ................................................... 4

*Patane v. Nestle Waters N. Am., Inc.*
    314 F. Supp. 3d 375 (D. Conn. 2018) .......................................................... 9, 10

*Pepsico, Inc. Bottled Water Mktg. & Sales Prac. Litig.*
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) ............................................................... 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*
    631 F.3d 436, 447 (7th Cir. 2011) ..................................................................... 8

*Richburg v. Conagra Brands, Inc.*, Case No. 22-cv-2420 WL 1818561 (N.D. Ill. Feb. 8,
    2023) ............................................................................................................. 3, 5

Siegel v. Shell Oil Co.
    612 F.3d 932 (7th Cir. 2010) ............................................................................ 3

*Tlaib v. Chattem, Inc.*
    No. 23-cv-376, 2023 WL 5830795 (N.D. Ill. Sept. 8, 2023) .............................. 8

*Turek v. General Mills, Inc.*
    662 F.3d 662 F.3d 423 (7th Cir. 2011) ............................................................. 9

*Wallace v. ConAgra Foods, Inc.*
    747 F.3d 1025 (8th Cir. 2014) .......................................................................... 7

*Yu v. Int'l Bus. Machines Corp.*
    732 N.E.2d 1173 (Ill. Ct. App. 2000) .......................................................... 3, 5, 6

## **STATUTES**

21 C.F.R. § 101.100(a)(3)(iii) .................................................................................. 4

21 C.F.R. § 165.110(a)(2)(i) ........................................................................... 5, 8, 9, 10

21 C.F.R. § 165.110(a)(2)(i)-(iv) .......................................................................... 5, 8

21 U.S.C. § 337(a) ............................................................................................................. 8

21 U.S.C. § 343-1 ............................................................................................................. 8

21 U.S.C.A. § 343(g) ........................................................................................................ 9

21 U.S.C.A. § 343(i) ......................................................................................................... 4

## INTRODUCTION

Defendant The Wonderful Company LLC ("Defendant" or "TWC") is a consumer brands company based in Los Angeles, California, committed to offering consumers high-quality, healthy brands. FIJI Water LLC ("FIJI"), a subsidiary of TWC, sells water derived, bottled, and shipped from the islands of Fiji ("FIJI Water"). On January 18, 2024, Plaintiff filed this putative class action, alleging a violation of the Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ICLS 505/1, *et seq.* ("ICFA"), along with claims for common law fraud and unjust enrichment. Plaintiff contends it is misleading to market FIJI Water as "Natural Artesian Water"[1] due to the alleged presence of microplastics. Compl. ¶¶ 25, 35-36.

Plaintiff does not dispute that FIJI Water is sourced exclusively from a natural artesian aquifer in Fiji. Instead, Plaintiff's claims are predicated on the conclusory assertion that FIJI Water products he purchased in December 2022 contained microplastics. Compl. ¶ 24. Plaintiff notably does not allege that he or anyone has actually tested bottles of FIJI Water for microplastics, much less that he tested the specific bottles he purportedly purchased. Nor does he allege that every bottle of FIJI Water contains microplastics. *Id.* ¶ 24. Instead, Plaintiff relies on two studies from 2018 and 2019, each of which detected the occurrence of microplastics in several other bottled water companies *not including FIJI Water*.[2] *Id.* ¶¶ 10-11.

Notwithstanding his failure to allege that microplastics have ever been detected in FIJI Water, Plaintiff asserts claims on behalf of himself and a putative class of all U.S. consumers, as

---

[1] Although the Complaint refers to "Natural Artisan Water," the Court can take judicial notice that the actual label refers to "Natural Artesian Water." *E.g.*, https://www.fijiwater.com (prominently displaying the product labeling).

[2] The referenced 2018 study found microplastics even in deionized water prepared in a laboratory as well as water bottled in glass. Ex. A at 6-7. In addition, the 2018 report reflects variation within different bottles of the same brand—with some containing no microplastics (or essentially none), depending on the place or method of purchase. *Id.* at 7.

well as a subclass of Illinois consumers, who purchased FIJI Water within the last five years. Compl. ¶¶ 39-40. Plaintiff alleges he overpaid for FIJI Water, and complains of supposedly wasted time and aggravation (*id.* ¶ 38), but he does not allege any adverse health effects from drinking FIJI Water or that he did not enjoy its taste and refreshment. He also does not allege what he purportedly paid for FIJI Water, or what other artesian or non-artesian water brands (if any) charge for comparable products that are not alleged to contain microplastics. Finally, Plaintiff does not allege—nor could he—that he has stopped drinking beverages of all kinds due to the potential of microplastics in all water sources, whether bottled, from a tap, or from a municipal water supply.

As set forth herein, Plaintiff's claims fail as a matter of law, are preempted by federal law, and should be dismissed.

## LEGAL STANDARD

A complaint cannot survive a Rule 12 motion to dismiss unless it "plead[s] particularized factual content" that "allows the court to plausibly infer the defendant is liable," *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019), not mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The heightened Rule 9(b) pleading standard governs any claim sounding in fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The Court can consider materials incorporated by reference in a complaint to grant a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## ARGUMENT

### I. Plaintiff Fails to Adequately Allege Essential Elements of His Claims.

To state an ICFA claim, Plaintiff must plausibly allege: (1) "a deceptive or unfair act or promise by the defendant;" (2) "the defendant's intent that the plaintiff rely on the deceptive or unfair practice;" (3) "the unfair or deceptive practice occurred during a course of conduct

involving trade or commerce[;]" and (4) "actual pecuniary loss" and "actual injury or damage." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Yu v. Int'l Bus. Machines Corp.*, 732 N.E.2d 1173, 1177 (Ill. Ct. App. 2000). To pursue common law fraud, Plaintiff must allege, in addition to these elements, actual reliance. *Connick v. Suzuki Motor Co*., 174 Ill. 2d 482, 496 (1996). Plaintiff does not, and cannot, allege the requisite elements of his claims.

### A.    Plaintiff Fails to Adequately Allege a Material Misrepresentation.

Plaintiff fails to plead facts sufficient to establish that the branding, labelling, or advertising of FIJI Water includes any material misrepresentation. Misrepresentation-based claims "cannot rest on 'unreasonable or fanciful interpretations of labels or other advertising.'" *Gardner v. Ferrara Candy Co*., No. 22-1272, 2023 WL 4535906, at *4 (N.D. Ill. Mar. 22, 2023). Rather, the law "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances," could be misled. *Castaneda v. Amazon.com, Inc.*, Case No. 22-cv-3187, 2023 WL 4181275, at *5 (N.D. Ill. June 26, 2023) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020)).

Relevant here, courts have repeatedly rejected the notion that consumers can reasonably interpret labels as conveying absolute guarantees about the absence of non-ingredient, migratory substances based solely on use of such generic terms as "real" or "natural." For example, in *Richburg v. Conagra Brands, Inc.*, Case No. 22-cv-2420, 2023 WL 1818561 at *7 (N.D. Ill. Feb. 8, 2023), the court dismissed ICFA and related claims based on labeling popcorn as containing only "real" and "natural" ingredients. The court concluded that reasonable consumers would not "consider … migratory chemicals," such as PFAS, "to be an 'ingredient'" that could support claims sounding in fraud. *Id.* Among other things, the court pointed out that Federal Food, Drug, and Cosmetic Act ("FDCA") requirements for what must be disclosed on packaged food

products' ingredient lists excludes certain "[s]ubstances migrating to food from equipment or packaging." *Id.* (citing 21 U.S.C.A. § 343(i); 21 C.F.R. § 101.100(a)(3)(iii)); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 757 (N.D. Ill. 2015) (dismissing ICFA claim challenging "no refined sugars" because "no reasonable consumer would think . . . the sugar contained" in a processed food "was still in its natural, completely unrefined state"). Because the FDCA exempts these migratory substances from disclosure as an "ingredient," the court concluded that, likewise, "reasonable consumers would not consider PFAS to be an ingredient." 2023 WL 1818561 at *7. Accordingly, the court held that "plaintiffs have not plausibly alleged that reasonable consumers would be deceived by defendant's representations or omissions on the [] products." *Id.*

Similarly, courts regularly dismiss these types of claims even when the incidental substance is proven to be harmful (in large quantities)—such as the pesticide glyphosate. For example, *Axon v. Citrus World, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020), affirmed dismissal of claims sounding in fraud that attacked the defendants' "natural" labeling statements as misleading because the challenged products allegedly contained trace amounts of glyphosate. The court reasoned:

> The presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name "Florida's Natural," would not make assumptions regarding the presence or absence of trace amounts of glyphosate.

*Id.* Similarly, in *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d at 241, 244, 247 (S.D.N.Y. 2019), a sister court dismissed a challenge to "natural" pet food that contained trace amounts of glyphosate, as "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount …." *See also, In re General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12,

2017) (finding that "Made with 100% Natural Whole Grain Oats" did not "mean[] that there is no trace glyphosate" in the product, and it would be implausible for a reasonable consumer to "so interpret the label"); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-6664, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (finding that a reasonable consumer would not "understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides"). *See also Richburg*, 2023 WL 1818561, at *7 ("[S]uch an interpretation is implausible in light of the FDA's exemption of migratory substances from the mandated list of 'ingredients' on food product packaging.").

The same common sense analysis that has been applied in a litany of PFAS and glyphosate cases likewise defeats Plaintiff's claims here. Moreover, the reasoning of these cases finds support in the fact that the FDCA expressly allows threshold concentrations of dozens of "inorganic substances," "organic chemicals," and "pesticides and other synthetic organic chemicals" in bottled water, including "artesian water." 21 C.F.R. § 165.110(a)(2)(i)-(iv). The FDCA's express allowance for trace substances negates the notion that reasonable consumers would assume "Natural Artesian Water" sold in a plastic bottle carries an absolute guarantee against the presence of microplastics.

Consequently, Plaintiff's claims—all of which turn on misrepresentation or omission-based theories—should be dismissed.

### B.    Plaintiff Fails to Adequately Allege Intent.

The Complaint contains no factual allegations to support Plaintiff's conclusory assertion that TWC acted with an intent to deceive consumers. Compl. ¶ 36. Particularly in this setting, where Plaintiff has not alleged any testing of which TWC was aware revealing the presence of microplastics in FIJI Water, Plaintiff's conclusory allegation does not satisfy Rule 9(b). *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill. 2022) (dismissing fraud claim

where allegations of intent rested solely on product label); *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 644 (N.D. Ill. 2022) ("It is simply unreasonable to infer that because Kashi allegedly should have known the statements on its label were inaccurate, it intended to deceive [plaintiff] and other consumers"); *Chiappetta v. Kellogg Sales Co.*, No. 21-cv-3545, 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022) (rejecting allegations of deceptive intent that were based on plaintiff's unreasonable interpretation of label).

Accordingly, absent tenable allegations of intent, Plaintiff's ICFA and fraud claims must be dismissed.

### C.    Plaintiff Fails to Adequately Allege Actual Injury and Damages.

Plaintiff's damages theory is similarly asserted in conclusory fashion, without supporting factual allegations, in the form of "lost money," wasted time, and "stress, aggravation [and] frustration." Compl. ¶ 38. These allegations are deficient to demonstrate "actual pecuniary loss" and "actual injury or damage." *Kim*, 598 F.3d at 365; *Yu*, 732 N.E.2d at 1177.

<u>First</u>, Plaintiff does not plausibly allege that the FIJI Water he purchased actually contained microplastics at all, much less at a concentration that a reasonable consumer would consider material. Instead, the Complaint refers to a 2018 study that did ***not*** test FIJI Water (or any other "artesian water") (Compl. ¶¶ 10-11; Ex. A) and that examined bottled water purchased at least four years before Plaintiff's alleged purchase in in December 2022. Compl. ¶ 24. There exists no plausible factual basis from which to extrapolate the findings of the 2018 study to Plaintiff's purchase of FIJI Water products in Illinois in 2022.  Even as to the brands actually tested in the 2018 study, the findings demonstrated wide variability among and even within brands. Ex. A at 6-7. It also found particular types of microplastics accounted for most of results, and Plaintiff does not allege that FIJI Water's bottle or bottling process would generate such microplastics. *Id.* at 10 (showing certain plastics represented just 6% of less of all microplastics

found across all samples). *See, e.g.*, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (dismissing complaint where plaintiffs allegedly paid a premium for "100% kosher" hot dogs because plaintiffs "g[a]ve no reason to think *all* the beef marked as kosher . . . did not meet kosher standards").

Second, Plaintiff has not adequately alleged that he "paid a price premium" for FIJI Water due to his alleged ignorance about microplastics. More specifically, he does not allege that (a) he could (and would) have purchased comparable "Natural Artesian Water" at a lower price, (b) artesian water that provides an absolute guarantee against microplastics typically sells at the price he allegedly paid for FIJI Water, or (c) artesian water products without an absolute guarantee against microplastics sell at a lower price than those products that make no representation one way or another about microplastics. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (rejecting price premium theory as "speculative and conclusory" where plaintiff failed to allege that he could have "shopped around and obtained a better price in the marketplace"); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (dismissing ICFA claim when alleged pecuniary loss was "quite vague," and plaintiffs had not shown the product was worth less than price). Here, Plaintiff does not allege he conducted any type of "precomplaint investigation" to comparison shop and "discover whether he could have found a better price" for bottled water free from any trace of microplastics in December 2022. *Camasta*, 761 F.3d at 738. Not surprisingly, Plaintiff also alleges no facts to support his conclusory allegations about wasted time and frustration. Compl. ¶ 38.

The Court therefore should dismiss Plaintiff's claims for failure to adequately allege actual pecuniary loss and actual injury or damage.

**D.**     **Plaintiff's Unjust Enrichment Claim Fails (Count III).**

Plaintiff's claim for unjust enrichment fails because it relies on the same allegations as

his ICFA and fraud claims. *Castaneda*, 2023 WL 4181275, at *13. Under Illinois law, "[u]njust

enrichment is not a separate cause of action that, standing alone, will justify an action for

recovery." *Tlaib v. Chattem, Inc.*, No. 23-cv-376, 2023 WL 5830795, at *5 (N.D. Ill. Sept. 8,

2023) (internal quotation omitted). "Rather, it is a condition that may be brought about by

unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and

may be redressed by a cause of action based upon that improper conduct." *Pirelli Armstrong Tire*

*Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).

Here, for the same reasons Plaintiff's ICFA and fraud claims fail, his unjust enrichment

claim too must also fail. *Chiappetta*, 2022 WL 602505, at *9 (dismissing unjust enrichment

claim where plaintiff failed to plausibly allege deception under ICFA).

**II.**     **Plaintiff's Claims Are Preempted or Subject to the ICFA's Safe Harbor.**

Plaintiff's claims also fail as a matter of law due to express and implied preemption under

the FDCA and the ICFA's statutory safe harbor.

"Bottled water" is a food subject to the FDCA, which establishes a standard of identity

for "artesian water" like FIJI Water. 21 C.F.R. § 165.110(a)(2)(i)-(iv). "[N]o State or political

subdivision of a State may directly or indirectly establish under any authority or continue in

effect as to any food in interstate commerce … any requirement for a food which is the subject of

a ***standard of identity*** … that is not ***identical*** to such standard of identity or that is not ***identical***

to the requirement of section 343(g) of this title." 21 U.S.C. § 343-1 (emphases added).

Moreover, "[a]ll … proceedings for the enforcement, or to restrain violations, of this chapter

shall be by and in the name of the United States." 21 U.S.C. § 337(a). "[A]ny inconsistent,

additional, or different state labeling requirement—including "common-law rules and duties

from the judiciary"—is expressly preempted." *Nemphos v. Nestlé Waters N. Am., Inc.*, 775 F.3d 616, 619-20, 624 (4th Cir. 2015); *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 385 (D. Conn. 2018) (holdings states "may not impose a 'spring water' requirement that varies in scope or substance from the federal definition"). And the FDCA gives rise to "an implied preemptive effect" over claims "based on conduct that was wrongful solely because it violated the FDCA." *Patane*, 314 F. Supp. 3d at 385. "[R]ecognizing the primacy of federal law in this field," the ICFA "itself protects companies from liability if their actions are authorized by federal law" such as the FDCA. *Bober v. Glaxosmithkline*, 246 F.3d 934, 942-43 (7th Cir. 2001); 815 Ill. Comp. Stat. 505/10b(1).

All of Plaintiff's claims rest on the premise that FIJI Water cannot be labeled "Natural Artesian Water" if bottles contain any level of microplastics, no matter how incidental. Compl. ¶ 25. All such claims are expressly preempted because they would impose a microplastics disclosure requirement that differs from FDCA requirements for artesian water. 21 U.S.C.A. § 343(g); 21 C.F.R. § 165.110(a)(2)(i); *Turek v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (dismissing claims as preempted because even assuming a disclaimer "would be consistent with the requirements imposed by the [FDCA], consistency is not the test; identity is"); *Baker v. Nestlé S.A.*, No. 18-03097, 2019 WL 960204, at *1-2 (C.D. Cal. Jan. 3, 2019) (preempting state law claims challenging use of "pure" for "purified water"). *See also Patane*, 314 F. Supp. 3d at 385 (preempting "a 'spring water' requirement that varies in scope or substance from the federal definition"); *In re Pepsico, Inc. Bottled Water Mktg. & Sales Prac. Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (preempting state law claims that would have "impose[d] obligations not imposed by federal law").

Even if Plaintiff were to claim that microplastics were added during bottling (which is not specifically alleged), the FDCA still preempts his claims. "[A] plaintiff may not simply dress up a generic state law claim of wrongful conduct to prosecute conduct that is 'wrong' only because it happens to violate the federal law requirements of the FDCA." *Patane*, 314 F. Supp. 3d at 386. By arguing that FIJI Water is not "Natural Artesian Water," Plaintiff necessarily contends it lacks the "properties, composition, and quality" of "water that flows ***naturally*** to the surface of the earth." 21 C.F.R. § 165.110(a)(2)(i) (emphasis in original). For similar reasons, Plaintiff's claim runs afoul of the ICFA's statutory safe harbor, which prohibits him from second guessing the FDA's regulatory regime for artesian water. *Bober*, 246 F.3d at 942-43.

Accordingly, Plaintiff's claims are preempted by federal law and barred by the ICFA's safe harbor.

## CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Court grant their motion and dismiss Plaintiff's claims.

Dated: March 22, 2024      Respectfully submitted,

**SIDLEY AUSTIN LLP**

By: */s/ Elizabeth Chiarello*
ELIZABETH M. CHIARELLO
echiarello@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-0640

Attorneys for Defendant
THE WONDERFUL COMPANY LLC