**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, JEANA DRISH, ANGIE ESPINOZA, and MOUSSA KOUYATE individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:24-cv-01267 |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| THE WONDERFUL COMPANY LLC | **JURY DEMANDED** |
| Defendant. | |

Now come the Plaintiffs, John Daly, Perry A. Bruno, Jeana Drish, Angie Espinoza, and Moussa Kouyate ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, and for their Class Action Complaint against the Defendant, THE WONDERFUL COMPANY LLC, ("Defendant"), Plaintiffs allege and states as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, unjust enrichment, Pennsylvania Unfair Trade Practices and Consumer Protection Law, Nevada Deceptive Trade Practices Act, NRS 598, *et seq.*, and New York General Business Law ("G.B.L") §§ 349, 350 resulting from the illegal actions of Defendant, in intentionally labeling its Products as Natural Artisan Water, when they contain microplastics. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(d), because Defendant removed this case alleging that the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which the members of the class are citizens of a State different from the Defendant.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the original claim occurred in this District

**PARTIES**

4.      Plaintiff John Daly is an individual who resides in Chicago, Illinois.

5.      Plaintiff Perry A. Bruno is an individual who resides in Las Vegas, Nevada.

6.      Plaintiff Jeana Drish is an individual who resides in Palos Heights, Illinois.

7.      Plaintiff Angie Espinoza is an individual who resides in Pittsburg, Pennsylvania.

8.      Plaintiff Moussa Kouyate is an individual who resides in New York, New York.

9.      Defendant is a Delaware corporation, whose principal place of business is located in Los Angeles, California.

10.     At all times relevant hereto, Defendant was engaged in the marketing and sale of bottled water.

**FACTS COMMON TO ALL COUNTS**

11.     Defendant advertises, markets, sells, and distributes bottled water throughout Illinois, New York, Pennsylvania, Nevada and the United States.

12.     During the Class Period Defendant sold Fiji bottled water (the "Products") labeled, marketed, and advertised as "Natural Artisan Water" but which actually contained microplastics.

13.     Microplastics are small sized plastic particles that originate from manufacturing and physical degradation of plastics. Microplastics encompass a variety of different molecules with different structures, shapes, sizes, and polymers.

14.     Microplastics are not naturally occurring. Instead, microplastics are typically made from polypropylene, polyethylene, polystyrene, and other synthetic polymers. [1]

15.     Microplastics can leach into the water from the bottle, and consumers are exposed to additives, processing aid, and unreacted monomers.[2]

16.     In 2018 Orb Media commissioned a global study on synthetic microplastic contamination in bottled water.[3] The study was performed at the Mason lab at State University of New York at Fredonia, Department of Geology & Environmental Sciences. The study tested 259 individual bottles from 27 different lots across 11 brands purchased from 19 locations in 9 countries. Ninety-three percent, ("93%"), of bottled water showed signs of microplastic contamination.

17.     A study conducted in 2019 found the origin of bottled microplastics in drinking water due to mechanical stress.[4] They proposed that the main mechanical reason for bottled water contamination originated from releasing microplastic particles from the bottleneck and plastic cap by frequent opening and closing.

---

[1] Md. Iftakharul Muhib, Md. Khabir Uddin, Md. Mostafizur Rahman, and Guilherme Malafaia, "Occurrence of microplastics in tap and bottled water, and food packaging: A narrative review on current knowledge," *Science of The Total Environment* (2022), http://dx.doi.org/10.1016/j.scitotenv.2022.161274.
[2] *Id; Winkler, A., Santo, N., Ortenzi,M.A., Bolzoni, E., Bacchetta, R., Tremolada, P., 2019. Does mechanical stress cause microplastic release from plastic water bottles? Water Res. 166, 115082*
[3] Orb Media, "Plus Plastic," Orb Media (2023), available at https://orbmedia.org/plus-plastic.
[4] Winkler, A., Santo, N., Ortenzi,M.A., Bolzoni, E., Bacchetta, R., Tremolada, P., 2019. Does mechanical stress cause microplastic release from plastic water bottles? Water Res. 166, 115082.

18.     Microplastic contamination in the Products is possible at various manufacturing levels and as a result of usage by reasonable consumers.[5]

19.     Toxic effects of microplastics on the physiology and behavior of marine invertebrates have been extensively documented.[6] Similar effects have also been observed in larger marine vertebrates such as fish. Furthermore, recent studies using mouse models have reported potential effects of Microplastics on mammalian gut microbiota, as well as cellular and metabolic toxicity in the host.[7] However, the pathophysiological consequences of acute and chronic exposure to microplastics in mammalian systems, particularly in humans, are not yet fully understood.[8]

20.     After being absorbed, Microplastics have the potential to be transported through the circulatory system and subsequently accumulate in various organs, including the kidney, gut, and liver.[9] Thus, the effects on several blood and the immune system cell lines have been widely reported for several Microplastics. Moreover, Microplastics exhibit a "Trojan Horse" effect by absorbing and transporting various environmental pollutants.[10]

---

[5] See Md. Iftakharul Muhib, Md. Khabir Uddin, Md. Mostafizur Rahman, and Guilherme Malafaia, "Occurrence of microplastics in tap and bottled water, and food packaging: A narrative review on current knowledge," *Science of The Total Environment* (2022), http://dx.doi.org/10.1016/j.scitotenv.2022.161274.

[6] Damià Barceló, Yolanda Picó, & Ahmed H. Alfarhan, *Microplastics: Detection in human samples, cell line studies, and health impacts*, Environmental Toxicology and Pharmacology (2023), https://doi.org/10.1016/j.etap.2023.104204; Grote, K., Brüstle, F., Vlacil, A.K., 2023. Cellular and systemic effects of micro- and nanoplastics in mammals—whatwe know so far. Materials 16, 3123. https://doi. org/10.3390/ma16083123;

[7] Yong, C.Q.Y., Valiyaveettil, S., Tang, B.L., 2020. Toxicity of microplastics and nanoplastics in mammalian systems. Int. J. Environ. Res. Public Health 2020 Vol. 17, 1509. https://doi.org/10.3390/IJERPH17051509.

[8] Damià Barceló, Yolanda Picó, & Ahmed H. Alfarhan, *Microplastics: Detection in human samples, cell line studies, and health impacts*, Environmental Toxicology and Pharmacology (2023), https://doi.org/10.1016/j.etap.2023.104204

[9] Id.

[10] Id.

21.     Studies indicate that exposure to microplastics through ingestion can lead to gastrointestinal problems such as irritable bowel syndrome; endocrine disruption such as adverse effects on hormonal balance and reproductive function; and cardiovascular problems such as increase of oxidative stress and impaired regular heart function.[11]

22.     Microplastics contamination is a material concern to Plaintiff and other reasonable consumers.

23.     Bottled water that is contaminated with microplastics is not natural.

24.     The Food and Drug Administration ("FDA") has not officially defined the term "natural" and has not promulgated an official rule regarding the use of the term "natural."

25.     Furthermore, FDA has considered the term "natural" to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food.[12]

26.     Microplastics are not expected to be in food or water.

27.     21 C.F.R. § 165.110 only allows for chemical concentrations of chloride, iron, manganese, phenols, total dissolved solids, and zinc.

28.     21 C.F.R. § 165.110 does not provide for allowed concentrations of polypropylene, polyethylene, polystyrene, or other synthetic polymers.

29.     21 C.F.R. § 165.110 states that bottled water containing a substance at a level considered injurious to health under section 402(a)(1) of the Federal Food, Drug, and Cosmetic Act (the act), or that consists in whole or in part of any filthy, putrid, or decomposed substance, or that is otherwise unfit for food under section 402(a)(3) of the act is deemed to be adulterated, regardless of whether or not the water bears a label statement of substandard quality prescribed by paragraph (c) of this section

---

[11] Ebuka Chizitere Emenike et al., *From Oceans to Dinner Plates: The Impact of Microplastics on Human Health*, Volume 9, issue 10, Heliyon, 2023, https://www.sciencedirect.com/science/article/pii/S240584402307648X
[12] U.S. Food and Drug Administration, "Use of the Term 'Natural' on Food Labeling," FDA (2023), available at https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling.

30. The Illinois Food, Drug, and Cosmetic Act ("IFDCA") incorporates all food regulations of the Federal Food, Drug, and Cosmetic Act. 410 ILCS 620/21(d).

31. Defendant's Products, as a result of their microplastic contamination, contain filthy substances.

32. Defendant's Products, as a result of their microplastic contamination, are unfit for food.

33. Microplastics transport environmental contaminants like heavy metals and harmful bacteria into the intestines of people who consume them.[13]

34. Microplastics are filth based on common parlance as they are dirty and unpleasant substances.[14]

35. Plaintiffs, and reasonable consumers, do not expect "Natural" water products to contain microplastics.

36. The following picture includes an example of Defendant's fraudulent labeling:

 

37. Yet, when consumers drink Defendant's Products, they are consuming synthetic plastic particles.

38. On December 17, 2022, Plaintiff John Daly purchased one case of Products labeled, marketed, and sold as "Natural Artisan Water", from a Meijer in Illinois.

---

[13] L. Hu, Y. Zhao & H. Xu, Trojan Horse in the Intestine: A Review on the Biotoxicity of Microplastics Combined Environmental Contaminants, 439 J. Hazard Mater. 129652 (2022), available at https://doi.org/10.1016/j.jhazmat.2022.129652.

[14] Filth, Oxford Learners Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/filth

39.     Plaintiff Angie Espinoza purchased one case of Products labeled every month from Amazon, marketed, and sold as "Natural Artisan Water". Plaintiff Espinoza's most recent purchase was on March 3, 2024.

40.     Plaintiff Jeana Drish purchased one case of Products labeled every month from Amazon, marketed, and sold as "Natural Artisan Water". Plaintiff Drish's most recent purchase was on February 28, 2024.

41.     On January 13, 2024, Plaintiff Moussa Kouyate purchased one case of Products labeled, marketed, and sold as "Natural Artisan Water", from a Fresh City Deli in Bronx New York.

42.     On or about March 8, 2024, Plaintiff Perry A. Bruno purchased two cases of Products labeled, marketed, and sold as "Natural Artisan Water", from an Albertsons in Nevada.

43.     Perry A. Bruno is an elderly person who is older than sixty years of age.

44.     Plaintiffs' Products contained microplastics despite being labeled Natural Artisan Water.

45.     Persons, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

46.     By making false and misleading claims about the contents of its Products, Defendant impaired Plaintiff's ability to choose the type and quality of products he chose to buy.

47.     Therefore, Plaintiff has been deprived of his legally protected interest to obtain true and accurate information about their consumer products as required by law.

48.     As a result of Defendant's fraudulent labeling, Plaintiff and the Class have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products were Natural Artisan Water.

7

49. As a result of Defendant's fraudulent labeling, Plaintiff and the Class paid a price premium for premium Products, but instead received non-premium Products.

50. Plaintiffs and the Class purchased Defendant's Products because Defendant's advertising claimed that the Products were Natural Artisan Water.

51. Due to Defendant's intentional, deceitful practice of falsely labeling the Products as Natural Artisan Water, Plaintiffs could not have known that the Products contained microplastics.

52. Plaintiffs were unaware that the Products contained microplastics when he purchased them.

53. Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they ingest.

54. Defendant, and not Plaintiffs, the Class, or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as Natural Artisan Water was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products they purchased contained microplastics unless Defendant expressly told them.

55. Defendant knew that the Products contained microplastics but chose to label the Products with Natural Artisan Water labeling anyway to induce consumers to purchase the Products.

56. Furthermore, copious research has shown the deleterious effects of plastic bottles on both the environment and human health, yet Defendant continues to bottle its water in plastic and continues to label the Products as Natural.[15]

---

[15] ABC7 News, "Nanoplastics found in bottled water and the bloodstream, study says," ABC7 News (2023), available at https://abc7news.com/nanoplastics-bottled-water-bloodstream-plastic/14302293/.

57.     As a result of Defendant's acts and omissions outlined above, Plaintiffs have suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

      a.     Lost money;

      b.     Wasting Plaintiffs' time; and

      c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the Original Complaint through the date of class certification.

59.     Plaintiffs also brings this action on behalf of themselves and all others similarly situated, as a member of the proposed Illinois sub-class (the "Illinois Sub-Class"), defined as follows:

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the Original Complaint through the date of class certification.

60.     Plaintiffs also brings this action on behalf of themselves and all others similarly situated, as a member of the proposed New York sub-class (the "New York Sub-Class"), defined as follows:

> All persons within the State of New York who purchased the Products within five years prior to the filing of the Original Complaint through the date of class certification.

9

61.     Plaintiffs also brings this action on behalf of themselves and all others similarly situated, as a member of the proposed Pennsylvania sub-class (the "Pennsylvania Sub-Class"), defined as follows:

> All persons within the State of Pennsylvania who purchased the Products within five years prior to the filing of the Original Complaint through the date of class certification.

62.     Plaintiffs also brings this action on behalf of themselves and all others similarly situated, as a member of the proposed Nevada sub-class (the "Nevada Sub-Class"), defined as follows:

> All persons within the State of Nevada who purchased the Products within five years prior to the filing of the Original Complaint through the date of class certification.

63.     Plaintiff Perry A. Bruno  also brings this action on behalf of himself and all others similarly situated, as a member of the proposed Nevada elderly sub-class (the "Nevada Elderly Sub-Class"), defined as follows:

> All elderly persons within the State of Nevada who purchased the Products within five years prior to the filing of the Original Complaint through the date of class certification.

64.     The Class and the Sub-Classes satisfy all of the requirements of the Federal Rules of Civil Procedure for maintaining a class action, specifically:

> a.     Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period.

b.      There are questions of fact and/or law which are common to the Class and the Sub-Class, and which predominate over questions affecting any individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

    i.      Whether Defendant disseminated false and misleading information by claiming the Products are "Natural Artisan Water";

    ii.      Whether the Class and Sub-Class members were informed that the Products contained microplastics;

    iii.      Whether the Products contained microplastics;

    iv.      Whether Defendant's conduct was unfair and deceptive;

    v.      Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

    vii.      Whether there should be a tolling of the statute of limitations; and

    viii.      Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

c.      Plaintiff's claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d.      Plaintiff have no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Class.

e.      Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Class and Plaintiffs have retained experienced and competent attorneys to represent the Class and the Sub-Class.

f.   This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

g.   This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Class members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy, Defendants will continue to benefit financially from such conduct.

h.   Defendants have acted on grounds generally applicable to the entire Class and Sub-Class, thereby making it appropriate for the Court to order final monetary, injunctive, and declaratory relief with respect to the Class and the Sub-Class as a whole.

65.   Defendant, its employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

66.   The size and definition of the Class and Sub-Class can be identified by Defendant's own records, and the records of retailers of Defendant's Products.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

67.     Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

68.     Plaintiffs are both a "person" as defined in 815 ILCS 505/1(c), as they are both natural persons.

69.     Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

70.     815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

71.     Through its representation of the Products as Natural Artisan Water, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiffs rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

72.     815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

73.     In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

74.     Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

75.     By reason thereof, Plaintiffs are entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

a.     An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b.     An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.     An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.     Judgment against Defendant in an amount to be determined at trial;

e.     An order for injunctive relief prohibiting such conduct by Defendant in the future;

f.     Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

g.     Any other relief deemed just and proper by this Court.

### COUNT II
### COMMON LAW FRAUD

76.     Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

77.     Through its false statements that the Products contained "Natural Artisan Water", Defendant made false statements of material fact.

78.     At the time Defendant made its statements to Plaintiffs that the Products contained "Natural Artisan Water", it knew, or reasonably should have known, that the statements described above were false.

79.     At the time Defendant made the statements to Plaintiff, Defendant intended to induce Plaintiff to purchase the Products.

80.     Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products he purchased contained microplastics.

81.     As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiffs and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products that did not provide them with the benefit of the bargain they paid money for, and stress, aggravation, frustration, inconvenience, emotional distress, mental

anguish, and similar categories of damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

    a.  An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representative of the Class and the Sub-Class;

    b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

    c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

    d.  Judgment against Defendant in an amount to be determined at trial;

    e.  An order for injunctive relief prohibiting such conduct by Defendant in the future;

    f.  Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

    g.  Any other relief deemed just and proper by this Court.

## COUNT III
## UNJUST ENRICHMENT

82.    Plaintiffs incorporate all of the allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

83.    Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

84.    Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products contained

16

"Natural Artisan Water".

85.     Defendant's retention of the revenue it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiffs, and the Class and Sub-Class members, as they would not have purchased the Products, or would not have paid a premium price, if they knew the Products contained microplastics.

86.     Defendant's unjust retention of the benefits conferred on it by Plaintiffs, and the Class and Sub-Class members, entitles Plaintiffs, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

  a.   An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

  b.   An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

  c.   An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

  d.   Judgment against Defendant in an amount to be determined at trial;

  e.   An order for injunctive relief prohibiting such conduct by Defendant in the future;

  f.   Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.  Any other relief deemed just and proper by this Court.

## COUNT IV
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW ("G.B.L") § 349

87.     Plaintiffs reallege and incorporate by reference all allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

88.     Plaintiff Kouyate brings this count on behalf of the New York Sub-Class.

89.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

90.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendants conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

91.     Plaintiff Kouyate and the New York Sub-Class members are consumers who purchased the Products from Defendants for their personal use.

92.     By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they are "Natural Artesian Water". Despite that representation, however, the Products contain microplastics.

93.      The foregoing deceptive acts and practices were directed at consumers.

94.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

95.     As a result of Defendants' deceptive practices, Plaintiff Kouyate and the New York Sub-Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendants' misrepresentations.

96.     On behalf of himself and the New York Sub-Class members, Plaintiff Kouyate

18

seeks to recover their actual damages or fifty dollars per unlawful transaction, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**REQUEST FOR RELIEF**

Plaintiff Kouyate, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative for the New York Sub-Class and appointing the undersigned counsel as Class Counsel for the New York Sub-Class;

b.      Ordering statutory damages in the amount of $50 for each purchase of the Products made by Plaintiff and the New York Sub-Class members.

c.      Ordering actual damages and treble damages.

d.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

e.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

f.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

g.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

h.      Ordering such other and further relief as may be just and proper.

**COUNT V**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW ("G.B.L") § 350**

97.      Plaintiffs reallege and incorporate by reference all allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

19

98.     Plaintiff Kouyate brings this count on behalf of the New York Sub-Class.

99.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

100.     Defendants violated New York General Business Law § 350 by representing on the packaging of the Products that they were "Natural Artesian Water". Despite that representation, however, the Products contain microplastics.

101.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

102.     Defendants' misrepresentations have resulted in consumer injury or harm to the public interest.

103.     As a result of Defendants' false advertising, Plaintiff and the New York Sub-Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendants' misrepresentations.

104.     On behalf of herself and the New York Sub-Class members, Plaintiff seeks to recover their actual damages or five hundred dollars per unlawful transaction, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## REQUEST FOR RELIEF

Plaintiff Kouyate, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative for the New York Sub-Class and appointing the undersigned counsel as Class Counsel for the New York Sub-Class;

b.     Ordering statutory damages in the amount of $500 for each purchase of the Products made by Plaintiff and the New York Sub-Class members.

c.     Ordering actual damages and treble damages.

d.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, and fraudulent business practices;

e.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

f.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

g.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

h.      Ordering such other and further relief as may be just and proper.

## COUNT VI
## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT, NRS 598, *et seq.*

105.    Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

106.    Nev. Rev. Stat. § 598.0915 states:

> A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:
> 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith.
> 7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model.
> 9. Advertises goods or services with intent not to sell or lease them as advertised.

107.   Through its representation that the Products were "Natural Artesian Water", Defendant made false representations as to the characteristics of the Products.

108.   Through its representation that the Products were natural, Defendant made false representations that the Products were of a particular standard.

109.   Through its representation that the Products were natural, Defendant advertised the Products with intent not to sell them as advertised.

110.   Nev. Rev. Stat. § 41.600 states:

> 1. An action may be brought by any person who is a victim of consumer fraud.
> 2. As used in this section, "consumer fraud" means:
> (e) A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive;
> 3. If the claimant is the prevailing party, the court shall award the claimant:
> (a) Any damages that the claimant has sustained;
> (b) Any equitable relief that the court deems appropriate; and
> (c) The claimant's costs in the action and reasonable attorney's fees.

111.   In taking the actions and omissions set forth above, and making the false representations of material facts set forth above, Defendant violated the Nev. Rev. Stat. § 598.0915. As a result, Plaintiff, and the class and subclass members are victims of consumer fraud as defined by Nev. Rev Stat. § 41.600.

112.   By reason thereof, Plaintiff, the class, and sub-class, are entitled to a judgment against Defendant, declaring that Defendant's conduct violated Nev. Rev. Stat. § 598.0915, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

113.   Additionally, Plaintiff is an "elderly person" as defined by Nev. Rev. Stat. § 598.0933, because he is a person who is older than 60 years of age.

22

114.    In taking the actions and omissions set forth above, and making the false representations of material facts set forth above, Defendant violated the Nev. Rev. Stat. § 598.0915. By reason thereof, Plaintiff and the subclass members are entitled to a judgement against Defendant, actual damages, punitive damages, and reasonable attorney fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.    An order certifying the Class and the Nevada Sub-Classes and appointing Plaintiff as Representative of the Class and the Nevada Sub-Classes;

b.    An order certifying the undersigned counsel as the Class and Sub-Classes Counsel;

c.    An order requiring Defendant, at its own cost, to notify all members of the Class and the Nevada Sub-Classes of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.    Judgment against Defendant in an amount to be determined at trial;

e.    An order for injunctive relief prohibiting such conduct by Defendant in the future;

f.    Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.    Any other relief deemed just and proper by this Court.

///

///

///

///

**COUNT VII**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**

115.    Plaintiff hereby incorporates all allegations and statements made in Paragraphs 1 through 66 above as if fully reiterated herein.

116.    Defendant's conduct as set forth above constitutes an unfair or deceptive practice within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq.

117.    Defendant's violation of the Pennsylvania Unfair Trade Practices and Consumer Protection law has caused Plaintiff to suffer the damage set forth hereinabove.

118.    Plaintiff is entitled to triple damages and attorneys' fees as a result of Defendant's conduct, pursuant to 73 P.S. §201-9.2.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

   a.  Declaratory judgment that Defendant's conduct
   violated the both statutes cited above;

   b.  Actual damages;

   c.  Statutory damages;

   d.  Costs and reasonable attorney's fees; and,

   e.  For such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevails on any of their claims in this action.

RESPECFULLY SUBMITTED,

JOHN DALY, PERRY A. BRUNO,
JEANA DRISH, ANGIE ESPINOZA, and
MOUSSA KOUYATE


/s/ Todd M. Friedman
Attorney for Plaintiffs
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: (323) 306-4234
Fax: (866) 633-0228
tfriedman@toddflaw.com

/s/ Steven G. Perry
Attorney for Plaintiffs
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228
Steven.perry@toddflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on July 31, 2024, a copy of the foregoing First Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff