**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT COURT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, JEANA DRISH, ANGIE ESPINOZA, and MOUSSA KOUYATE, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>THE WONDERFUL COMPANY LLC,<br><br>      Defendant. | Civil Action No. 1:24-cv-01267<br><br>Assigned to: Hon. Matthew F. Kennelly |

## MEMORANDUM OF LAW IN SUPPORT OF

## DEFENDANT THE WONDERFUL COMPANY LLC'S MOTION TO DISMISS

JOHNNY TRABOULSI (*pro hac vice*)
johnny.traboulsi@roll.com
REID P. DAVIS (*pro hac vice*)
reid.davis@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810

ELIZABETH M. CHIARELLO
echiarello@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-0640
Facsimile: (312) 853-7036

Attorneys for Defendant
THE WONDERFUL COMPANY LLC

# **TABLE OF CONTENTS**

**Page No.**

INTRODUCTION ...........................................................................................................1

LEGAL STANDARD....................................................................................................3

ARGUMENT ................................................................................................................3

I.       Plaintiffs' Claims Are Expressly and Impliedly Preempted. ...............................3

II.      Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted..............................6

         A.       Plaintiffs Do Not Allege The Product Was Actually Tested And Cannot Plausibly
                  Allege That It Contains "Filthy Substances" At Levels Sufficient To Be
                  "Adulterated."...................................................................................................6

         B.       Plaintiffs Fail To Plausibly Allege The Elements of State Consumer Protection
                  Statutes. ..........................................................................................................8

                  1.       Applicable Law..............................................................................8

                  2.       Plaintiffs Fail to Adequately Allege a Misrepresentation Capable of
                          Misleading a Reasonable Consumer.................................................9

                  3.       Plaintiffs Fail to Adequately Allege Intent. ...............................11

                  4.       Plaintiffs Fail to Adequately Allege Actual Injury and Damages. ............12

         C.       Plaintiffs' Unjust Enrichment Claim Fails (Count III). .........................13

III.     Plaintiffs Lack Standing To Pursue Injunctive Relief. .....................................14

CONCLUSION.............................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Living of Metro. Chicago v. Uber Techs., Inc.*,
    958 F.3d 604 (7th Cir. 2020) ...........................................................................14

*Ackerman v. Nw. Mut. Life Ins. Co*.,
    172 F.3d 467 (7th Cir. 1999) ...........................................................................13

*Anthony v. Country Life Mfg., L.L.C.*,
    No. 02 C 1601, 2002 WL 31269621 (N.D. Ill. Oct. 9, 2002) ....................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009)................................................................................3

*Axon v. Florida's Nat. Growers, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) .....................................................................10

*Bank of N.Y. Mellon v. Sunrise Ridge Master Homeowners Ass'n*,
    No. 2:17-cv-00233-JAD-DJA, 2020 WL 2064065 (D. Nev. Apr. 28, 2020) ...........9

*Barreto v. Westbrae Nat., Inc.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021)..............................................................11

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) ......................................................................4, 13

*Bober v. Glaxosmithkline*,
    246 F.3d 934 (7th Cir. 2001) ...........................................................................6

*Bogie v. Rosenberg*,
    705 F.3d 603 (7th Cir. 2013) ...........................................................................3

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502, 507 (7th Cir. 2007) .....................................................................3

*Bruno v. Am. Textile Co., Inc.*,
    No. 22-cv-2937, 2023 WL 6976826 (N.D. Ill. Oct. 23, 2023) ...............................14

*Bruno v. BlueTriton Brands, Inc.*,
    No. 2:24-cv-01563 MWF (JPRx), 2024 WL 2794098 (C.D. Cal. May 6, 2024).....................6

*Bruno v. BlueTriton Brands, Inc.*,
    No. 2:24-cv-01563 MWF (JPRx) (C.D.Cal. Aug. 9, 2024).................................2, 6

i

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................................4

*Caltagirone v. Cephalon, Inc.*,
  No. 160902877, 2017 WL 2734246 (Pa. Com. Pl. May 02, 2017) ........................5

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ..............................................................................12

*Castaneda v. Amazon.com, Inc.*,
  Case No. 22-cv-3187, 2023 WL 4181275 (N.D. Ill. June 26, 2023)................9, 13

*Chiappetta v. Kellogg Sales Co.*,
  No. 21-cv-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ..........................11, 13

*Chicago Joe's Tea Room, LLC v. Vill. of Broadview*,
  894 F.3d 807 (7th Cir. 2018) ..............................................................................14

*Connick v. Suzuki Motor Co.*,
  174 Ill. 2d 482 (1996) ...........................................................................................8

*Doe v. Columbia Coll. Chi.*,
  933 F.3d 849 (7th Cir. 2019) ................................................................................3

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)..................................................................................8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).............................................................................................14

*Gardner v. Ferrara Candy Co.*,
  No. 22-1272, 2023 WL 4535906 (N.D. Ill. Mar. 22, 2023) ..................................9

*In re General Mills Glyphosate Litig.*,
  No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) .................................10

*Geske v. PNY Techs., Inc.*,
  503 F. Supp. 3d 687 (N.D. Ill. 2020) ...................................................................14

*Harris v. Kashi Sales, LLC*,
  609 F. Supp. 3d 633 (N.D. Ill. 2022) ...................................................................11

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
  No. 18-6664, 2019 WL 2515919 (N.D. Cal. June 18, 2019).........................10, 12

*Kim*, 598 F.3d at 365.................................................................................................12

*Lowe v. Edgewell Personal Care Co.*,
  23-cv-00834 (N.D. Cal. Jan. 12, 2024)..................................................................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................14

*Lurenz v. The Coca-Cola Co.*,
    22-cv-10941 (S.D.N.Y. June 10, 2024) ....................................................................7

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
    528 F. Supp. 3d 1168 (D. Nev. 2021) ......................................................................9

*Nemphos v. Nestlé Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ...................................................................................5

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ....................................................................................8

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d (S.D.N.Y. 2019) ..........................................................................10

*Patane v. Nestlé Waters N. Am., Inc.*,
    314 F. Supp. 3d 375 (D. Conn. 2018) ......................................................................4

*In re Pepsico, Inc. Bottled Water Mktg. & Sales Prac. Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008) .....................................................................5

*Picus v. Wal-Mart Stores, Inc.*,
    256 F.R.D. 651 (D. Nev. 2009) ...............................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .................................................................................13

*Richburg v. Conagra Brands, Inc.*,
    Case No. 22-cv-2420, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) ........................10

*Rudy v. Fam. Dollar Stores, Inc.*,
    583 F. Supp. 3d 1149 (N.D. Ill. 2022) ...................................................................11

*Seidl v. Artsana USA, Inc.*,
    643 F. Supp. 3d 521 (E.D. Pa. 2022) ......................................................................9

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ...................................................................................8

*Slowinski, et al. v. BlueTriton Brands, Inc.*,
    No. 1:24-cv-00513, 2024 WL 3757097 (N.D. Ill. Aug 9, 2024) ....................*passim*

*Tlaib v. Chattem, Inc.*,
    No. 23-cv-376, 2023 WL 5830795 (N.D. Ill. Sept. 8, 2023) ..................................13

*Turek v. General Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ..............................................................................5

*Verzani v. Costco Wholesale Corp.*,
    No. 09-CIV-2117 (CM), 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ...................5

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ...........................................................................12

**Statutes and Rules**

73 P.S. § 201-1, *et seq.* ..........................................................................................9

21 C.F.R. § 165.110 ...................................................................................3, 4, 5, 11

21 U.S.C. § 331 ...........................................................................................................5

21 U.S.C. § 337(a) ................................................................................................2, 4

21 U.S.C. § 342(a)(1) ................................................................................................7

21 U.S.C. § 343(g) .....................................................................................................5

21 U.S.C. § 402 ....................................................................................................1, 4, 7

815 Ill. Comp. Stat. 505/10b(1) ...............................................................................6

Fed. R. Civ. P. 9(b) ...........................................................................................3, 11, 13

Fed. R. Civ. P. 12 ........................................................................................................3

N.Y. Gen. Bus. L. § 349(a), 350 ..........................................................................5, 8

Nev. R. Stat. § 598.0915 ...........................................................................................9

**Other Authorities**

https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-
    nanoplastics-foods?utm_medium=email&utm_source=govdelivery .......................7

## INTRODUCTION

This is the second attempt by Plaintiff John Daly – who is now joined by Plaintiffs Perry A. Bruno, Jeana Drish, Angie Espinoza, and Moussa Kouyate (collectively, "Plaintiffs") – to allege consumer protection claims based on the labeling of FIJI Water (the "Product") as "Natural Artesian Water." First Amended Compl. ("FAC") ¶¶ 44, 54-55. Plaintiffs notably do not allege that they have tested the Product for trace microplastics or that they have any basis for their claims beyond alleging that seemingly every water source now contains trace amounts of microplastics. Their claims rest entirely on 2018 and 2019 studies examining trace microplastics in other bottled waters distributed by other companies, *not the Product*.[1]

Simply put, the FAC does nothing to correct the deficiencies present in the original complaint. Plaintiffs' consumer protection claims are preempted by federal law and otherwise fail to plausibly allege, among other things, the requisite elements of material misrepresentation, intent, injury and damages. Whereas Plaintiffs' original complaint was premised on a mis-labelling theory (*i.e.* the alleged presence of microplastics is inconsistent with the "Natural Artesian Water" labelling), the amended complaint now alleges the Product contains "filthy substances" (*i.e.*, trace microplastics) and is therefore "adulterated" in violation of Section 402(a) of the Food, Drug and Cosmetic Act ("FDCA"). Plaintiffs assert their claims on behalf of a putative class of all U.S. consumers, as well as subclasses of Illinois, New York, Nevada, and Pennsylvania consumers, who purchased FIJI Water within the last five years. FAC ¶¶ 58-65.

Plaintiffs' new adulteration theory cannot save their claims from FDCA preemption. The *gravamen* of the FAC remains the same, and state consumer protection laws cannot serve as an end-run around the FDA's exclusive enforcement authority under the FDCA. Because Plaintiffs expressly premise their state law claims on purported violations of FDCA regulations, such claims

---

[1] Plaintiffs' counsel has filed substantively identical claims, based on the same studies, against several other bottled water manufacturers. As further discussed herein, at least two of those other manufacturers have already successfully moved to dismiss such claims (albeit with leave to amend on the initial round of pleading). No court to consider these claims has found them to be viable at or beyond the pleading stage.

remain preempted under 21 U.S.C. § 337(a).  Indeed, presented with substantively identical state law claims about microplastics in bottled water (brought by the same plaintiffs' counsel here), two district courts have already held that federal law preempts such lawsuits.

First, in *Bruno v. BlueTriton Brands, Inc.*, No. 2:24-cv-01563 MWF (JPRx) (C.D.Cal. Aug. 9, 2024),[2] the plaintiff alleged that "100% Mountain Spring Water" was misleading because, based on ***actual testing***, the products contained "filthy substances" and were therefore "adulterated" under the FDCA.  In granting a motion to dismiss, the court observed that "Plaintiff's allegations of mislabeling are contingent upon standards set by the FDCA and alleged violations of the FDA's regulations" and therefore remained preempted by Section 337(a) of the FDCA.  (Ex. A, Aug. 8, 2024 Order at 4.)  Second, in *Slowinski, et al. v. BlueTriton Brands, Inc.*, No. 1:24-cv-00513, 2024 WL 3757097 at *12 (N.D. Ill. Aug 9, 2024), plaintiff similarly alleged that "100% Natural Spring Water" violated the ICFA and Illinois common law due to the alleged presence of microplastics. There, Judge Seeger appropriately dismissed the case, ruling, *inter alia*, that "Plaintiffs' state-law claims would impose labeling obligations for spring water beyond the FDCA's standard of identity" and were therefore expressly preempted.  *Id*.  The Court here should reach the same conclusion as was reached in both *Bruno* and *Slowinski*, and dismiss Plaintiffs' claims on federal preemption grounds.

In addition to being preempted, Plaintiffs' claims are also independently subject to dismissal because they cannot plausibly plead the Product was "adulterated" because it has never actually been: (1) tested for microplastics: (2) determined to contain any "filthy substances" of "polypropylene, polyethylene, polystyrene, or other synthetic polymers" (FAC ¶ 31); or (3) found to have concentrations of "filthy substances" that would be harmful to human health in violation of FDCA regulations.  Finally, as discussed below, Plaintiffs fail to plausibly plead the elements of materiality, intent, and actual injury to support their state law claims, which should be dismissed.

---

[2] A copy of the August 9, 2024 Order of dismissal is attached hereto as **Exhibit A.**  The named plaintiff in *Bruno v. BlueTriton Brands, Inc.* is also a named plaintiff in the present action, and is represented by the same plaintiffs' counsel in both,

For any and all of these alternative reasons, Defendant The Wonderful Company LLC ("Defendant" or "TWC") respectfully requests that Plaintiffs' FAC be dismissed with prejudice.

## **LEGAL STANDARD**

A complaint cannot survive a Rule 12 motion to dismiss unless it "plead[s] particularized factual content" that "allows the court to plausibly infer the defendant is liable," *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019), not mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The heightened Rule 9(b) pleading standard governs any claim sounding in fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The Court can consider materials incorporated by reference in a complaint to grant a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## **ARGUMENT**

### I.   **Plaintiffs' Claims Are Expressly and Impliedly Preempted.**

Despite amendment, Plaintiffs' claims remain expressly and impliedly preempted by federal law. The original complaint alleged that TWC falsely labeled (or misbranded) the Product as "Natural Artesian Water" and should have disclosed the presence of microplastics. Compl. ¶¶ 25, 36. Recognizing that such a claim would be preempted by federal law by imposing a microplastics disclosure requirement that differs from FDCA requirements for artesian water, Plaintiffs now allege microplastics are "filthy" substances, whose purported presence in the Product renders it "adulterated" in violation of FDCA regulations for bottled water. FAC, ¶¶ 27-34. But this is a purported distinction without a difference, and one already rejected by a sister court in this district. *Slowinski*, 2024 WL 3757097 at *12.

Plaintiffs cite to 21 C.F.R. § 165.110, which governs the adulteration of bottled water:

> (d) Adulteration. Bottled water containing a substance at a level considered injurious to health under section 402(a)(1) of the Federal Food, Drug, and Cosmetic Act (the act), or that consists in whole or in part of any filthy, putrid, or decomposed substance, or that is otherwise unfit for food under section 402(a)(3) of the act is deemed to be adulterated, regardless of whether or not the water bears a label statement of substandard quality prescribed by paragraph (c) of this

3

> section. If E. coli is present in bottled water, then the bottled water
> will be deemed adulterated under section 402(a)(3) of the act.

21 C.F.R. § 165.110(d); FAC ¶ 29. In doing so, Plaintiffs separately observe that while 21 C.F.R. § 165.110(b)(4) permits certain levels of "chloride, iron, manganese, phenols, total dissolved solids, and zinc," the FDCA regulations do not expressly allow any "concentrations of polypropylene, polyethylene, polystyrene, or other synthetic polymers." FAC ¶ 28. Plaintiffs then jump to the conclusion that the Product, which was never actually tested for "polypropylene, polyethylene, polystyrene, or other synthetic polymers," contain "filthy substances" in violation of Section 402 of the FDCA. FAC ¶¶ 29, 31-32.

Plaintiffs' new framing of their claims premised on the Products being "adulterated" with "filthy substances" (*i.e.,* microplastics) cannot avoid preemption. Section 337 of the FDCA provides that "[a]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). It imposes "an implied preemptive effect" on claims "based on conduct that was wrongful solely because it violated the FDCA." *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 385 (D. Conn. 2018) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)). "The Supreme Court has observed that Section 337(a) "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance." *Buckman Co*, 531 U.S. at 349 n.4; *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) ("The FDCA does not create a private right of action.")*.*

Consequently, Plaintiffs are foreclosed from pursuing consumer protection claims under Illinois, New York, Nevada, or Pennsylvania law based upon an alleged violation of the FDCA. "[A] plaintiff may not simply dress up a generic state law claim of wrongful conduct to prosecute conduct that is 'wrong' only because it happens to violate the federal law requirements of the FDCA." *Patane*, 314 F. Supp. 3d at 386. Importantly, because Plaintiffs never allege they were physically injured after consuming water that purportedly did not meet federal standards, their claims are "unmistakably one[s] for direct enforcement of the FDCA" and thus preempted. *See*

*Anthony v. Country Life Mfg., L.L.C.*, No. 02 C 1601, 2002 WL 31269621, at *3 (N.D. Ill. Oct. 9, 2002) (claim by uninjured plaintiff that manufacturer violated Illinois consumer protection law by "knowingly plac[ing] 'adulterated' bars into the stream of commerce" preempted); *Verzani v. Costco Wholesale Corp.*, No. 09-CIV-2117 (CM), 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) (dismissing plaintiff's New York GBL § 349 claim for misbranding based on violation of 21 U.S.C. § 331 of FDCA); *Caltagirone v. Cephalon, Inc.*, No. 160902877, 2017 WL 2734246, at *4 (Pa. Com. Pl. May 02, 2017) (claims preempted where "negligence, misrepresentation, fraud and UTPCPL claims could not exist in the absence of federal laws and regulations.").

Although Plaintiffs' FAC appears to move away from the mislabelling argument in favor of an adulteration argument, the former – if renewed – remains expressly preempted because it would impose a microplastics disclosure requirement that differs from FDCA requirements for artesian water. *See* 21 U.S.C. § 343(g); 21 C.F.R. § 165.110(a)(2)(i); *Turek v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (dismissing claims as preempted because even assuming a disclaimer "would be consistent with the requirements imposed by the [FDCA], consistency is not the test; identity is"); *In re Pepsico, Inc. Bottled Water Mktg. & Sales Prac. Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (preempting state law claims that would have "impose[d] obligations not imposed by federal law"). "[A]ny inconsistent, additional, or different state labeling requirement—including "common-law rules and duties from the judiciary"—is expressly preempted." *Nemphos v. Nestlé Waters N. Am., Inc.*, 775 F.3d 616, 619-20, 624 (4th Cir. 2015). Likewise, to the extent Plaintiffs mean to argue the Product is not "Natural Artesian Water," their claims again implicate the FDCA's standard of enforcement for "properties, composition, and quality" of water sourced from "a confined aquifer" and "collected with the assistance of external force to enhance the ***natural*** underground pressure," 21 C.F.R. § 165.110(a)(2)(i) (emphasis added) – and therefore are preempted.[3]

---

[3] Although the word "natural" is not defined in FDCA regulations, the term "natural" both appears in, and is part of, the standard of identity for artesian water. 21 C.F.R. § 165.110(a)(2)(i). Plaintiffs cannot choose to delete the word "Artesian" from the "Natural Artesian Water" to read the Product label as containing "Natural Water" and then impose a "no

Accordingly, as in *Bruno* and *Slowinski*, Plaintiffs' claims here are preempted by federal law—a defect that is not capable of being cured by amendment.[4]

## II.      **Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted.**

### A.      **Plaintiffs Do Not Allege The Product Was Actually Tested And Cannot Plausibly Allege That It Contains "Filthy Substances" At Levels Sufficient To Be "Adulterated."**

Plaintiffs do not allege anywhere in the FAC that any Product was actually: (1) tested for microplastics: (2) determined to contain any "filthy substances" of "polypropylene, polyethylene, polystyrene, or other synthetic polymers" (FAC ¶ 31); or (3) found to have concentrations of "filthy substances" that would be harmful to human health in violation of FDCA regulations. Instead, Plaintiffs continue to rely exclusively upon two studies from 2018 and 2019, each of which detected the occurrence of microplastics in several other brands of bottled water, *not including the Product*.[5]  FAC ¶¶ 17-18.  Having failed to test any Product purchased by Plaintiffs, Plaintiffs cannot plausibly allege they contained "filthy substances" in violation of the FDCA.  *Lowe v.*

---

[4] Plaintiffs' claim also runs afoul of the ICFA's statutory safe harbor, which prohibits him from second guessing the FDA's regulatory regime for artesian water.  *Bober v. Glaxosmithkline*, 246 F.3d 934, 942-43 (7th Cir. 2001) ("[R]ecognizing the primacy of federal law in this field," the ICFA "itself protects companies from liability if their actions are authorized by federal law" such as the FDCA) *see also* 815 Ill. Comp. Stat. 505/10b(1).

microplastics" requirement for artesian water.  By doing so, Plaintiffs challenge the meaning of "natural artesian water" and impose and additional (and inconsistent) obligations to the FDA's standard of identity for "natural artesian water."  Such claims are preempted.  *Slowinski*, 2024 WL 3757097, at *12  ("defining the essential characteristics of spring water is the exclusive domain of the FDA" and "Plaintiffs' state-law claims would impose labeling obligations for spring water beyond the FDCA's standard of identity"); *Bruno v. BlueTriton Brands, Inc.*, No. 2:24-cv-01563 MWF (JPRx), 2024 WL 2794098 at *3 (C.D. Cal. May 6, 2024) ("to the extent Plaintiff argues that Defendant should either remove "100%" from its label due to the presence of microplastics or more accurately disclose the composition of the Product, such a requirement would impose obligations that go beyond those provided in the FDCA").

[5] The referenced 2018 study found microplastics even in deionized water prepared in a laboratory as well as water bottled in glass.  Ex. B at 6-7.  In addition, the 2018 report reflects variation within different bottles of the same brand—with some containing no microplastics (or essentially none), depending on the place or method of purchase.  *Id.* at 7.

*Edgewell Personal Care Co.*, 23-cv-00834 (N.D. Cal. Jan. 12, 2024) (dismissing complaint where "testing allegations are cursory, providing no specificity as to the results or any other findings" and "silent as to the amount of organic fluorine detected and whether that amount is negligible or significant"); *Lurenz v. The Coca-Cola Co.*, 22-cv-10941 (S.D.N.Y. June 10, 2024) (dismissing complaint where plaintiff commissioned single test of sample, rather than product actually purchased).

Moreover, even ignoring the lack of testing (which certainly cannot be ignored), the hypothetical presence of microplastics alone would not render the Products "adulterated" under the FDCA. First, Section 402(a) of the FDCA expressly exempts any substance that is "not an added substance" from the definition of "adulterated food" if "the quantity of such substance in such food does not ordinarily render it to injurious to health." 21 U.S.C. § 342(a)(1). This exemption squarely applies here because Plaintiffs do not (and cannot) allege TWC intentionally added any of the purported "filthy substances" as part of its manufacturing process. Second, on July 24, 2024, FDA issued guidance on microplastics and bottled water in relevant part as follows:

> Several studies have found microplastics and nanoplastics in both tap and bottled water; however, at this time, the scientific evidence does not demonstrate that levels of microplastics or nanoplastics in water pose a risk to human health. ***The presence of microplastics and nanoplastics in water alone, does not indicate a risk and does not violate FDA regulations unless it creates a health concern***. Learn more about how the FDA keeps bottled water safe to drink.
>
> The U.S. Environmental Protection Agency sets limits for contaminants in drinking (tap) water, but there currently are no regulatory levels set for microplastics or nanoplastics in drinking water.

(*See* https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods?utm_medium=email&utm_source=govdelivery) (emphasis added). Accordingly, applicable FDA guidance dictates that the presence of microplastics by itself in bottled water does not mean a product is in fact adulterated. Rather, to allege adulteration,

Plaintiffs would be required to set forth factual allegations showing that the Product contains concentrations of microplastics significant enough to present a risk to human health.

Put simply, Plaintiffs do not allege the Product has been tested, do not allege that the Product has been otherwise determined to include microplastics, and do not allege that microplastics were present in such a concentration as to present a health risk. As such, Plaintiffs' adulteration claim is not sufficiently pled and must be dismissed.

    **B.**     <u>**Plaintiffs Fail To Plausibly Allege The Elements of State Consumer Protection Statutes.**</u>

    **1.**     **Applicable Law**

Plaintiffs assert consumer fraud claims under the laws of Illinois, New York, Nevada, and Pennsylvania. While the requirements of each jurisdiction differ, for purposes of disposing of the FAC, the pertinent substance is the same.

-     <u>**Illinois**</u> requires pleading of (1) "a deceptive or unfair act or promise by the defendant;" (2) "the defendant's intent that the plaintiff rely on the deceptive or unfair practice;" (3) reliance; (4) "the unfair or deceptive practice occurred during a course of conduct involving trade or commerce[;]" and (4) "actual pecuniary loss" and "actual injury or damage." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996); 815 ICLS 505/1, *et seq.*

-     <u>**New York**</u> requires pleading of "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." N.Y. Gen. Bus. L. § 349(a), 350; *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

-     <u>**Nevada**</u> requires allegations that the defendant (1) "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods…for sale…"; (2) "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade…if he or she knows or should know that they are of another standard,

quality, grade…"; or (3) "[a]dvertises goods or services with intent not to sell or lease them as advertised." Nev. R. Stat. § 598.0915(5), (7), (9). Further, the plaintiff must allege that she relied on such false representations and as a result suffered injury. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009); *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1178 (D. Nev. 2021); *Bank of N.Y. Mellon v. Sunrise Ridge Master Homeowners Ass'n*, No. 2:17-cv-00233-JAD-DJA, 2020 WL 2064065, at *6 (D. Nev. Apr. 28, 2020) (identifying reliance as an element for Nev. R. Stat. § 598.0915(15)).

- **Pennsylvania** requires allegations of "(1) a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) the plaintiff's justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss." *Seidl v. Artsana USA, Inc.*, 643 F. Supp. 3d 521, 531 (E.D. Pa. 2022); 73 P.S. § 201-1, *et seq.*

### 2. Plaintiffs Fail to Adequately Allege a Misrepresentation Capable of Misleading a Reasonable Consumer.

Plaintiffs fail to plead facts sufficient to establish that the branding, labelling, or advertising of the Product includes any material misrepresentation capable of misleading a reasonable consumer – a necessary element under any of the applicable consumer protection statutes. Misrepresentation-based claims "cannot rest on 'unreasonable or fanciful interpretations of labels or other advertising.'" *Gardner v. Ferrara Candy Co*., No. 22-1272, 2023 WL 4535906, at *4 (N.D. Ill. Mar. 22, 2023). Rather, the law "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances," could be misled. *Castaneda v. Amazon.com, Inc.*, Case No. 22-cv-3187, 2023 WL 4181275, at *5 (N.D. Ill. June 26, 2023) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020)).

Ruling on identical microplastic claims, Judge Seeger recently and emphatically rejected Plaintiffs' misrepresentation theory, finding absurd and unrealistic that reasonable consumers would view the presence of microplastics to be misleading. He explained that, "[r]easonable consumers don't buy bottled water and then look for the nearest microscope…. No reasonable

consumer would read the phrase '100% Natural Spring Water'; and think that [the manufacturer] was making a guarantee at the molecular level…. At some point, 100% is close enough for horseshoes and hand grenades." *Slowinski,* 2024 WL 3757097 at *13. Put simply, "[n]o reasonable consumer would expect a disclosure about the presence of microscopic particles." *Id.*

Other courts have applied similar reasoning to dismiss claims alleging trace contamination due to chemicals ubiquitous in the environment, rejecting the notion that consumers can reasonably interpret labels as conveying absolute guarantees about the absence of non-ingredient, migratory substances that permeate the environment based solely on the use of such generic terms as "real" or "natural." For example, in *Richburg v. Conagra Brands, Inc.*, Case No. 22-cv-2420, 2023 WL 1818561 at *7 (N.D. Ill. Feb. 8, 2023), the court dismissed ICFA and related claims based on labeling popcorn as containing only "real" and "natural" ingredients, reasoning that reasonable consumers would not "consider … migratory chemicals," such as PFAS, "to be an 'ingredient'" that could support claims sounding in fraud. *Id.* Similarly, in a series of cases concerning glyphosates, courts dismissed complaints alleging misrepresentation-based theories predicated on labelling products as "natural." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) ("a reasonable consumer, viewing the brand name 'Florida's Natural,' would not make assumptions regarding the presence or absence of trace amounts of glyphosate"); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d at 241, 244, 247 (S.D.N.Y. 2019) ("a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount …."); *In re General Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (finding "Made with 100% Natural Whole Grain Oats" did not "mean[] that there is no trace glyphosate" in the product, and it would be implausible for a reasonable consumer to "so interpret the label"); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-6664, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (finding reasonable consumers would not "understand 'Natural' or 'All Natural Ingredients' to mean the utter absence of residual pesticides").

10

The same common sense analysis likewise defeats Plaintiffs' claims here. Indeed, the reasoning of these cases finds support in the fact that the FDCA expressly *allows* threshold concentrations of dozens of "inorganic substances," "organic chemicals," and "pesticides and other synthetic organic chemicals" in bottled water, including "artesian water." 21 C.F.R. § 165.110(a)(2)(i)-(iv). The FDCA's express allowance for trace substances negates Plaintiffs' premise that reasonable consumers assume labels such as "Natural Artesian Water" convey an absolute guarantee down to the molecular level against the presence of microplastics.

Consequently, Plaintiffs' consumer protection based claims should be dismissed.

### 3. Plaintiffs Fail to Adequately Allege Intent.

The FAC continues to be devoid of any factual allegations to support the conclusory assertion that TWC acted with the necessary intent to deceive consumers. FAC ¶ 55. Again, where Plaintiffs have not alleged any testing revealing the presence of microplastics in the Product, let alone TWC's knowledge of such testing, Plaintiffs' conclusory allegations do not satisfy Rule 9(b). *See, e.g.*, *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill. 2022) (dismissing fraud claim where allegations of intent rested solely on product label); *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 644 (N.D. Ill. 2022) ("It is simply unreasonable to infer that because Kashi allegedly should have known the statements on its label were inaccurate, it intended to deceive [plaintiff] and other consumers"); *Chiappetta v. Kellogg Sales Co.*, No. 21-cv-3545, 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022) (rejecting allegations of deceptive intent that were based on plaintiff's unreasonable interpretation of label*); Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (dismissing fraud claim based on conclusory allegation that defendant failed "to accurately identify the Products on the front label when it knew this was not true"). Particularly pertinent is that the Court in *Slowinski* found equally conclusory intent allegations about trace microplastics insufficient to avoid dismissal. 2024 WL 3757097 at *14-15.

Accordingly, absent plausible, well-pled allegations of intent, Plaintiffs' fraud claims must be dismissed.

11

###### 4. **Plaintiffs Fail to Adequately Allege Actual Injury and Damages.**

Plaintiffs' damages theory is similarly conclusory, generically referring to "lost money," wasted time, and "stress, aggravation [and] frustration." FAC ¶ 38. Such allegations cannot demonstrate "actual pecuniary loss" and "actual injury or damage." *Kim*, 598 F.3d at 365; *Yu*, 732 N.E.2d at 1177; *Slowinski*, 2024 WL 3757097 at *16.

First, Plaintiffs do not plausibly allege that their water actually contained microplastics at all, much less at a concentration that a reasonable consumer would consider material. Instead, they refer to 2018 and 2019 studies that did ***not*** test FIJI Water (or any other "artesian water") (FAC ¶¶ 16-17; Ex. B) and that examined bottled water purchased as much as four years before their purchases. There exists no plausible factual basis from which to extrapolate the findings of the 2018 and 2019 studies to purchases of the Product years later. Even as to the brands actually tested in those studies, the findings demonstrated wide variability among and even within brands. Ex. B at 6-7. It also found particular types of microplastics accounted for most of results, and Plaintiffs do not allege that the Product's bottle or bottling process would generate such microplastics. *Id.* at 10 (showing certain plastics represented just 6% of less of all microplastics found across all samples). *See, e.g.*, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (dismissing complaint where plaintiffs allegedly paid a premium for "100% kosher" hot dogs because plaintiffs "g[a]ve no reason to think *all* the beef marked as kosher . . . did not meet kosher standards"). Accordingly, absent plausible allegations of microplastics detected in the Product, Plaintiffs have failed to adequately allege injury.

Second, Plaintiffs have not adequately alleged that they "paid a price premium" for the Product due to their purported ignorance about the presence of microplastics in bottled water. More specifically, they do not allege that (a) they could (and would) have purchased comparable "Natural Artesian Water" at a lower price, (b) artesian water that provides an absolute guarantee against microplastics typically sells at the price they allegedly paid for the Product, or (c) artesian water products without an absolute guarantee against microplastics sell at a lower price than those products that make no representation one way or another about microplastics. *See Camasta v. Jos.*

*A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (rejecting price premium theory as "speculative and conclusory" where plaintiff failed to allege that he could have "shopped around and obtained a better price in the marketplace"); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (dismissing ICFA claim when alleged pecuniary loss was "quite vague," and plaintiffs had not shown the product was worth less than price).  Here, Plaintiffs do not allege they conducted any type of "precomplaint investigation" to comparison shop and discover whether they could have found a better price for bottled water free from any trace of microplastics.  *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) (requiring plaintiff to allege precomplaint investigation to satisfy fraud pleading requirements of Rule 9(b)).  Not surprisingly, Plaintiffs also allege no facts to support their conclusory allegations about wasted time and frustration. FAC. ¶ 57.

As in *Slowinski*, the Court therefore should dismiss Plaintiffs' claims for failure to adequately allege actual pecuniary loss and actual injury or damage.  *Slowinski*, 2024 WL 3757097 at *16.

**C.  Plaintiffs' Unjust Enrichment Claim Fails (Count III).**

Plaintiffs' claim for unjust enrichment under Illinois law fails because it relies on the same allegations as their ICFA and fraud claims.  *Castaneda*, 2023 WL 4181275, at *13.  Under Illinois law, "[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Tlaib v. Chattem, Inc.*, No. 23-cv-376, 2023 WL 5830795, at *5 (N.D. Ill. Sept. 8, 2023) (internal quotation omitted); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).  Here, for the same reasons Plaintiffs' consumer protection claims fail, their unjust enrichment claim too must also fail.  *Chiappetta*, 2022 WL 602505, at *9 (dismissing unjust enrichment claim where plaintiff failed to plausibly allege deception under ICFA).

13

III.     **Plaintiffs Lack Standing To Pursue Injunctive Relief.**

Plaintiffs lack standing to pursue injunctive relief because they do not plausibly allege a risk of future harm.[6]  To the contrary, they allege that they would not have purchased the water at all had they known that it contained microplastics.  FAC ¶ 84.  Thus, Plaintiffs presumably will not purchase the Product – or pay a premium for the Product – in the future.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).  Instead, a plaintiff must allege "a real and immediate threat" of a future injury.  *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 613 (7th Cir. 2020).  Applying this principle in the consumer-fraud context, courts have reasoned, "[o]nce a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm.  A 'fool me once' plaintiff does not need an injunction if he or she is not going to buy the product again anyway.  There is no risk of 'fool me twice,' so there is no basis for an injunction." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020).  "[P]laintiffs bringing deceptive trade practice claims based on past illegal conduct do not have standing to seek injunctive relief because the plaintiff is aware of the allegedly deceptive practices and any potential for future harm is speculative." *Bruno v. Am. Textile Co., Inc.*, No. 22-cv-2937, 2023 WL 6976826 at *6 (N.D. Ill. Oct. 23, 2023).  Accordingly, Plaintiffs lack standing to pursue injunctive relief because they do not, and cannot, allege a likelihood of future deception.

## CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Court grant their motion and dismiss Plaintiffs' claims.

---

[6] Even assuming Plaintiffs could establish standing as to the non-injunctive remedies alleged, the Court may nevertheless dispose of the injunctive relief remedies on standing grounds.  "[A] plaintiff must demonstrate standing separately for each form of relief sought." *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see also Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018) ("[A] plaintiff must have standing for each form of relief sought.").

Dated: August 28, 2024     Respectfully submitted,

**SIDLEY AUSTIN LLP**

By: _/s/ Elizabeth M. Chiarello_
ELIZABETH M. CHIARELLO
echiarello@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-0640
Facsimile: (312) 853-7036

Attorneys for Defendant
THE WONDERFUL COMPANY LLC