IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, JEANA DRISH, ANGIE ESPINOZA, and MOUSSA KOUYATE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE WONDERFUL COMPANY, LLC, <br><br> Defendant. | Case No. 24 C 1267 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs John Daly, Perry A. Bruno, Jeana Drish, Angie Espinoza, and Moussa Kouyate all purchased, most recently in 2022 and 2024, bottles of Fiji Water at local grocery stores or from Amazon delivery services. The label on a Fiji Water bottle says that it contends "Natural Artesian Water." Plaintiffs contend that the use of the term "natural" is false because the water contains microplastics, which, plaintiffs say, are anything but natural.

Plaintiffs have filed suit against The Wonderful Company LLC (TWC), which distributes and sells Fiji Water. Plaintiffs assert their claims on behalf of a putative class of all U.S. consumers, as well as subclasses of consumers in Illinois, New York, Nevada, and Pennsylvania, who purchased Fiji Water between December 2022 and March 2024. They seek relief under state consumer protection laws and for common law fraud and unjust enrichment. TWC has moved to dismiss plaintiffs' amended

complaint, arguing that plaintiffs' claims are preempted by federal law; that they have not adequately alleged the elements of their claims; and that they lack standing to pursue injunctive relief.

For the reasons stated below, the Court overrules TWC's contention that plaintiffs' claims are preempted. The Court nonetheless dismisses all of plaintiffs' claims for failure to state a claim and also dismisses their claim for injunctive relief for lack of standing.

## Background

TWC advertises, distributes, and sells bottled Fiji Water throughout the United States. Plaintiffs allege that the water in these bottles contains microplastics. The Environmental Protection Administration defines microplastics as small particles of plastic ranging from 5 millimeters to 1 nanometer in size. Plaintiffs contend that microplastics from plastic bottles can contaminate the water held in the bottles and, as a result, expose consumers to these substances, leading to harmful health effects.

Plaintiffs allege generally that the water they purchased contained microplastics. To support this, plaintiffs point to two studies. First, a 2018 study at the State University of New York Mason Lab concluded that 93 percent of bottled water among eleven brands—not including Fiji Water—showed signs of microplastic contamination in varying degrees. Second, plaintiffs cite a study from 2019, which found that a reason for microplastic contamination in bottled water was mechanical stress on the cap and bottleneck from repeated opening and closing. Plaintiffs also cite to research studies finding that microplastics have toxic effects in marine invertebrates.

The Federal Food, Drug, and Cosmetic Act (FDCA) confers upon the Food and

Drug Administration (FDA) the authority to regulate the food, drug, cosmetic, and medical industries. Under the FDCA and implementing regulations, certain products are considered to be "adulterated" or unsafe or defective because they contain contaminants or foreign substances. Plaintiffs allege that TWC sells adulterated water and mislabels it as "Natural Artesian Water." They contend that due to microplastic contamination, Fiji Water bottles cannot truthfully be labeled "natural" because consumers do not expect "natural" food or water to contain microplastics. Am. Compl. ¶¶ 23, 35. Plaintiffs also allege that these microplastics are "filthy substances" that render the water "adulterated" under section 342 of the FDCA, 21 U.S.C. § 402(a). *See id*. ¶ 29. As relevant here, this provision of the FDCA states that a food is deemed adulterated—

> (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health . . . [or] (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; . . . .

21 U.S.C. § 402(a)(1), (3).

Plaintiffs assert claims for: violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 (count 1); common law fraud (count 2); unjust enrichment (count 3); and for violation of sections 349 and 350 of the New York General Business Law, N.Y. Gen. Bus. Law § 349, 350 (2023) (counts 4 and 5), Nevada Deceptive Trade Practices Act section 41.600, Nev. Rev. Stat. § 41.600 (2023) (count 6), and Pennsylvania Unfair Trade Practices and Consumer Protection Law section 201-1, 73 Pa. Stat. § 201-1 (count 7).

## Discussion

In their amended complaint, plaintiffs allege that TWC falsely labeled Fiji Water as "Natural Artesian Water" despite knowing it had microplastic contamination. In support of this contention, plaintiffs contend that Fiji Water is "adulterated" within the meaning of section 402(a).

The FDA has promulgated a regulation elaborating on section 402(a) in the context of bottled water. This regulation, in relevant part, reads as follows:

> Bottled water containing a substance at a level considered injurious to health under section 402(a)(1) of the Federal Food, Drug, and Cosmetic Act (the act), or that consists in whole or in part of any filthy, putrid, or decomposed substance, or that is otherwise unfit for food under section 402(a)(3) of the act is deemed to be adulterated, regardless of whether or not the water bears a label statement of substandard quality prescribed by paragraph (c) of this section.

21 C.F.R. § 165.110(d).

Plaintiffs contend that bottled Fiji Water is contaminated with microplastics and therefore contains "filthy substances." Am Compl. ¶ 31. They further allege that plaintiffs and other reasonable consumers would not expect that bottled water labeled "natural" would contain microplastics and that this fraudulent labeling "impaired Plaintiff[s'] ability to choose the type and quality of products" they purchase. Am Compl. ¶¶ 35, 36, 46.

TWC seeks dismissal on four grounds. First, it argues that plaintiffs' claims are expressly and impliedly preempted by the FDCA. Second, it argues that plaintiffs have failed to state a claim upon which relief may be granted because they do not allege that they tested Fiji Water bottles and found microplastic contamination at levels sufficient to be "adulterated" under the FDCA and because they do not meet the standards for

4

liability under state consumer protection statutes or for common law fraud. Third, TWC argues that plaintiffs have not alleged a basis for a claim of unjust enrichment. Lastly, it argues that plaintiffs lack standing to pursue injunctive relief.

To survive TWC's motion to dismiss for failure to state a claim, the plaintiffs "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* A plaintiff may not rely on labels and conclusory allegations; he or she must plead "particularized factual content." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019). Moreover, "[i]f the claim rests on allegations of deceptive conduct, then Rule 9(b) applies, and the plaintiff must plead with particularity the circumstances constituting fraud. . . . Specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (internal quotation marks omitted).

For the following reasons, the Court grants TWC's motion to dismiss.

**A.    Preemption**

TWC argues that all of plaintiffs' claims are expressly and impliedly preempted by the FDCA. The principle of preemption is grounded in the Constitution's Supremacy Clause. "A federal law may preempt a state law expressly, impliedly through the doctrine of conflict preemption, or through the doctrine of field (also known as complete) preemption." *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 486 (7th Cir. 2005). In this

case, TWC argues that express and implied preemption bar plaintiffs' suit.

"With express preemption, a federal statute explicitly provides that it overrides state law," whereas "[i]mplied conflict preemption occurs where it is impossible for a private party to comply with both state and federal requirements, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (internal citations and quotation marks omitted).

Under the FDCA, courts have identified two primary provisions that lead to express or implied preemption of state-law claims. These include 21 U.S.C. §§ 343-1(a)(1) and 337(a). These provisions impact the ability of a plaintiff to seek relief for violations under state laws that overlap with the FDCA. Section 343-1(a)(1) expressly "precludes the States from adopting their own self-styled definitions or labeling requirements [ . . . ] that differ or depart from the federal standards." *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 385–86 (D. Conn. 2018); *see generally Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 (2001). Section 337(a) operates via implied preemption by "foreclos[ing] state law causes of action that are predicated on a violation of the FDCA rather than on some independent provision or requirement of state law." *Patane*, 314 F. Supp. 3d at 385–86.

For the reasons explained below, the Court finds that plaintiffs' claims are neither expressly nor impliedly preempted.

    a.    **Implied preemption via section 337(a)**

Section 337(a) establishes that all proceedings for the enforcement or to restrain violations of the FDCA "shall be by and in the name of the United States." 21 U.S.C.

§ 337(a). Courts have interpreted this provision to impliedly preempt any claims that are based on a contention that the defendant violated the FDCA or a regulation promulgated under the FDCA, as opposed to a state law violation. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); *see also Buckman Co.*, 531 U.S. at 347-49.

In arguing that section 337(a) preempts plaintiffs' claims, TWC incorrectly narrows the claims, reading them as premised on the contention that TWC violated the FDCA or an FDA regulation. The Court understands the plaintiffs' claims differently. Though plaintiffs cite in their amended complaint the FDCA as well as FDA regulations related to the products' contents, their claims are premised on violations of various states' consumer protection laws arising from the alleged mislabeling of Fiji Water as "natural." In particular, plaintiffs allege that their claims arise from TWC "intentionally labeling its Products as Natural Artesian Water, when they contain microplastics" and TWC's "fraudulent labeling" and "deceitful practice of falsely labeling the Products Natural Artesian Water." Am. Compl. ¶¶ 1, 36, 51.

It is true that plaintiffs reference the FDCA and an FDA regulation to support their claim, on the basis that labeling the product as "natural" is misleading because it contains material considered to be "filthy substances" under the FDCA and regulations. But that does not mean that plaintiffs are suing for a violation of the FDCA or FDA regulations. The lawsuit concerns the use of the term "natural" on the label, not the contents of the bottles as such. And the plaintiffs are suing not under federal law but rather under state consumer protection statutes. For example, in Count 1, plaintiffs allege a "violation of the Illinois Consumer Fraud and Deceptive Business Practices Act"

and allege that "Defendant failed to comply with the requirements of the ILCFA." Am. Compl. ¶¶ 67, 73, 74. This and other similar state statutes create "private rights of action to complement enforcement by the government." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020); *see also Benson*, 944 F.3d at 645 ("The FDCA does not create a private right of action. . . . Even so, plaintiffs are entitled to seek relief pursuant to related state-law causes of action.") (internal citations omitted).

For these reasons, the Court concludes that plaintiffs' suit is not preempted by reason of section 337(a).

### b. Express preemption via section 343

TWC argues that even if plaintiffs' claims are limited to mislabeling, they are preempted. They base this contention on 21 U.S.C. § 343(a)(1), which prohibits states from directly or indirectly establishing a "any requirement for a food which is the subject of a standard of identity established under [21 U.S.C. § 341] that is not identical to such standard of identity or that is not identical to the requirement of [21 U.S.C. § 343(g)]." 21 U.S.C. § 343-1(a)(1). TWC argues that under this provision, any state law that tacks on additional requirements beyond those imposed via the FDCA-based standard of identity for bottled water is preempted. *See generally Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

Under authority conferred by the FDCA, the FDA has provided a "standard of identity" for artesian water:

> The name of water from a well tapping a confined aquifer in which the water level stands at some height above the top of the aquifer is "artesian water" or "artesian well water." Artesian water may be collected with the assistance of external force to enhance the natural underground pressure. On request, plants shall demonstrate to appropriate regulatory officials that the water level stands at some height above the top of the aquifer.

8

21 C.F.R. § 165.110(a)(2)(i); see 21 U.S.C. § 341 (giving the FDA authority to promulgate a "reasonable definition and standard of identity" for food items).

TWC argues that plaintiffs are attempting to use state law to add onto the federal standard a requirement that natural water must lack any contamination of microplastics. TWC argues that the FDA's standard of identity for bottled water is silent on this point and that as a result, requiring bottled water to be free of microplastics runs afoul of section § 343-1(a)(1). As a result, TWC contends, plaintiffs' state law claims are preempted.

This argument runs headlong into *Bell v. Publix Super Markets*. *Bell* involved a claim that products the defendant labeled as "100% Grated Parmesan Cheese" were deceptively labeled, in violation of state consumer protection statutes, because the products contained five to nine percent cellulose powder and potassium sorbate. The district judge found the labels would not deceive an ordinary consumer, a determination the Seventh Circuit overturned because it was inappropriate on a motion to dismiss. *Bell*, 982 F.3d at 482. The court therefore reached the defendants' alternative argument that the plaintiffs' claims were preempted under the FDCA, specifically via 21 U.S.C. § 343-1(a)(1), the same provision upon which TWC relies here. The defendants in *Bell* contended that because the FDA's standard of identity for grated cheeses allowed adding the types of ingredients the plaintiffs had identified as present in the defendants' products, state law could not be used to sue defendants for doing so. Defendants argued that because the standard of identity did not prohibit labeling the products as "100%" cheese, a state law requirement that would prohibit using that phrase would establish a requirement not identical to the standard of identity, in violation of section

9

343-1(a)(1).

The Seventh Circuit squarely rejected the defendants' argument. It said the defendants' position "does not follow from the statute because the defendants read the express preemption provision too broadly. . . . [N]othing in the standard of identity says whether products named 'Grated Parmesan Cheese' may be labeled with an additional modifier such as '100%.'" *Id.* at 484. The court concluded that, for purposes of the FDCA's express preemption provision, because the standard of identity did not require any particular labeling disclosures, "it is defendants' labels, not plaintiffs' claims, that depart from the standard of identity. Plaintiffs are not seeking to *add* labeling requirements. They seek only to stop defendants from voluntarily adding deceptive language to the federally permitted labels." *Id.* The court stated that because the federal identity standard did not address the "100%" language, "[i]f state law prevents such deception, it will not establish any new requirement different from the [federal] standard." *Id.* Thus the plaintiffs' claims were not preempted.

So too here. To borrow language from *Bell*, "state-law claims challenging defendants' voluntary addition of ['natural'] to their labels are not preempted." *Id.* Nothing in the FDA's standard of identity for artesian water says anything about what the label for artesian water must include, and the FDA's standard certainly does not expressly authorize calling artesian water "natural." Thus, under *Bell*, a state-law claim that challenges TWC's addition of the term "natural" is not preempted.

In support of its express preemption argument, TWC points to a case in this district with similar facts, *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867 (N.D. Ill. 2024). In *Slowinski*, the plaintiffs sued the manufacturer of Ice Mountain Water,

10

arguing that the "100% Natural Spring Water" label was misleading in violation of the Illinois consumer protection laws because the water contained microplastics. *Id.* at 873. The district court found the plaintiffs' claims were expressly preempted because they imposed requirements regarding the definition of spring water beyond those in the FDA's standard of identity. *Id.* at 882-84. The Court respectfully disagrees with the reasoning in *Slowinski*; it seems directly contrary to the Seventh Circuit's reasoning in *Bell*.

TWC also cites *Daly v. Danone Waters of America, LLC*, No. 24 C 2424, 2024 WL 4679086 (N.D. Ill. Nov. 5, 2024), in which another judge in this district found similar claims regarding a different type and brand of bottled water to be preempted under section 343-1(a). In that case, the plaintiff alleged that Evian water bottles were mislabeled as "Natural Spring Water" despite microplastic contamination. In dismissing the complaint based on preemption, the court noted that the FDA's standard of identity for "spring water" mentioned the word "natural" seven times—to describe each of the seven potential sources of spring water—and concluded that the two terms, natural and spring water, were "inextricably intertwined." *Id.* at *1. The court concluded that the regulation's effective inclusion of "natural" in the definition of spring water meant that "any claim that imposes a requirement for use of the word 'natural' beyond proper identification of the water's source goes beyond the regulatory requirements and is thus preempted." *Id.*

It is noteworthy that the judge in *Daly v. Danone* expressly disagreed with the preemption-related reasoning of the judge in *Slowinski*. *Id.* at 2. But that aside, the present case is distinguishable from *Daly v. Danone*. The FDA standard of identity for

11

artesian water uses the word "natural" only once, and not in describing the source or content of artesian water.  Rather, it uses the term in the following sentence, which involves not the water itself but how it is propelled:  "Artesian water may be collected with the assistance of external force to enhance the natural underground pressure."  This is nothing like the use of "natural" in the standard discussed in *Daly v. Danone*.

For these reasons, the Court finds that plaintiffs' claims are not preempted.

C.      **Sufficiency of plaintiffs' claims**

TWC argues that plaintiffs' claims are deficient because they do not plausibly allege that:  (1) Fiji Water actually contains microplastics; (2) the "Natural Artesian Water" label would mislead a reasonable consumer; (3) TWC had the requisite intent; and (4) the plaintiffs suffered actual injury and damages.  Plaintiffs' claims fail on the first of these points, so the Court need not address the other three.

Plaintiffs have brought claims under five state consumer protection statutes.  Each of these statutes "require[s] plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers."  *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020).  Deception—or, more specifically, making a false statement with the intent to induce reliance—is also an element of plaintiffs' common law fraud claim.  *See generally Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (listing the elements of a fraud claim).  And plaintiffs' unjust enrichment claim is expressly premised on the allegation that TWC made false statements about Fiji Water.  *See* Am. Compl. ¶ 84.  In this case, the alleged deception concerns calling Fiji Water "natural" artesian water even though it contains microplastics**.**

TWC argues that "Plaintiffs do not allege anywhere in the [first amended complaint] that any Product was actually: (1) tested for microplastics, (2) determined to contain any 'filthy substances' of 'polypropylene, polyethylene, polystyrene, or other synthetic polymers' . . .; or (3) found to have concentrations of 'filthy substances' that would be harmful to human health in violation of FDCA regulations." Mem. in Support of Mot. to Dismiss at 6. For these reasons, TWC argues, plaintiffs do not plausibly allege that Fiji Water actually contains microplastics and thus do not plausibly allege that TWC made deceptive or fraudulent representations.

At the motion to dismiss stage, the Court views plaintiffs' claims in "the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The question in this case is whether plaintiffs' allegation that the Fiji Water they purchased contained microplastics is a "well-pleaded" factual allegation.

It is unclear whether it is reasonable to expect the plaintiffs to have tested the specific items they purchased; those were likely consumed. But under the circumstances, plaintiffs' bare and (in the Court's view) unsupported allegation that Fiji Water contains microplastics is insufficient to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 570. It would perhaps be sufficient if plaintiffs had cited to relatively contemporaneous tests of other bottles of Fiji Water (whether opened or unopened), but that is not what they have done. Rather, their only reference to testing involves other brands of water, not Fiji Water. Plaintiffs also cite a study regarding a proposed mechanism for how microplastic contamination of

13

bottled water occurs—from twisting the lid open and shut—but this study, as least as plaintiffs characterize it in their complaint, is less than definitive, and plaintiffs do not allege that Fiji Water bottles were tested in that study either.[1]

Allowing a suit of this type to proceed on this basis would basically open the door to enabling any purchaser of any consumable product to file a lawsuit simply saying, "I bought product X, and it contains microplastics" (or "forever" chemicals, or heavy metals, or whatever) and thereby get past a motion to dismiss and into discovery and class certification proceedings. Given the context (consumable products claimed to include contaminants), plausibility requires more. The Court concludes that plaintiffs' conclusory and unsupported allegation that Fiji Water is contaminated with microplastics, thus rendering the "Natural" appellation misleading, is insufficient to give rise to a plausible claim for relief.

Because this element is crucial to all of plaintiffs' claims, the Court dismisses the amended complaint for failure to state a claim upon which relief may be granted.

**D.    Injunctive relief**

TWC also argues that plaintiffs lack standing to seek injunctive relief. The Court addresses this point, even though it has dismissed plaintiffs' claims, because it involves a threshold issue of standing.

The Court agrees with TWC that plaintiffs do not have standing to pursue injunctive relief. "Past exposure to illegal conduct does not in itself show a present case

---

[1] The Court also notes that if post-purchase activity is what causes microplastic contamination in bottled water, there is at least room to doubt whether it is actually misleading to call the bottled product—which by definition is opened after the time of purchase—"natural." But that is an issue for another day.

or controversy regarding injunctive relief." *O'Shea v. Littleton,* 414 U.S. 488, 495 (1974). Rather, there must be a "real and immediate threat" that plaintiffs will be harmed again by TWC's conduct. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The plaintiffs, however, are now well aware that Fiji Water is claimed to contain microplastics, and thus there is little doubt that they will not be harmed again in the future. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014)("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by JAB, Camasta is not entitled to injunctive relief.").

Plaintiffs' request for injunctive relief is dismissed for lack of standing.

## Conclusion

The telephonic status hearing set for March 4, 2025 is vacated. For the foregoing reasons, the Court grants TWC's motion to dismiss plaintiffs' amended complaint [dkt. no. 27]. Unless plaintiffs file, by no later than March 18, 2025, a proposed second amended complaint that includes at least one viable claim over which the Court has jurisdiction, the Court will enter judgment against them. A telephonic status hearing is set for March 25, 2025 at 9:10 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date: March 3, 2025

_____
MATTHEW F. KENNELLY
United States District Judge